**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| **INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, et al.** | * * | |
| **Plaintiffs,** | * | |
| **v.** | | **Case No. WDQ-11-1938** |
| | * | |
| **DLC CORPORATION, INC., et al.** | * | |
| **Defendants** | * | |

* * * * * * * * * * * * *

**REPORT AND RECOMMENDATION**

The above-referenced case was referred to the undersigned for review of plaintiffs' motion for default judgment and to make recommendations concerning damages, pursuant to 28 U.S.C. § 301 and Local Rule 301.6. (ECF No. 12.) Currently pending is plaintiffs' Motion for Judgment by Default by the Court Pursuant to Federal Rule of Civil Procedure 55(b)(2) against Defendants ("Motion" or "Motion for Default Judgment") (ECF No. 11.) No hearing is deemed necessary. See Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons discussed herein, I respectfully recommend that plaintiffs' motion (ECF No. 11) be GRANTED and that relief be awarded as set forth herein.

## I. BACKGROUND

International Painters and Allied Trades Industry ("IPAT") Pension Fund ("Pension Fund") and Gary J. Meyers ("Mr. Meyers") (collectively, "plaintiffs") brought this suit against DLC Corporation, Inc. ("defendant" or "defendant DLC") and Debbie Lori Cruz, the president and owner of that company ("defendant Cruz" or "Ms. Cruz") (collectively, "defendants" or

"Company") for alleged breach of contract in violation of § 185 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, et seq., and violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. (ECF No. 1.)

Defendant is a party to a collective bargaining agreement ("CBA") with the International Union of Painters and Allied Trades Local Union 460 ("Union"), whose members it employs. (Id. ¶ 16.) The CBA obligates defendant to file timely contribution reports and to make timely contributions to three different beneficiaries for time worked by or paid to Union workers. (CBA, ECF No. 1-6, Ex. 2); (Id. ¶ 18.) Those beneficiaries are: (1) Pension Fund; (2) Finishing Trades Institute f/k/a/ International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI") (collectively, "ERISA Funds"); and (3) Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI") (collectively with ERISA Funds, "Funds"). (CBA, ECF No. 1-6, Ex. 2, Arts. XVII-XIX.) The Company is also a party to the Agreement and Declaration of Trust ("Trust Agreement") that establishes the Pension Fund, which incorporates by reference the Plan Rules and Regulations ("Plan") for the ERISA Funds, and, accordingly, is bound by their terms. (ECF No. 1 ¶¶ 17-18); (Trust Agreement, ECF No. 1-7, Ex. 3); (Plan Rules, ECF No. 1-8, Ex.4). If the Company fails to comply with the CBA and incorporated Trust Agreement and Plan documents, the Company must (1) produce books and records deemed necessary for, and submit to, an audit of all records concerning its obligations to the Funds, and (2) pay liquidated damages, interest, audit costs, and attorneys' fees and costs. (ECF No. 1 ¶ 18); (CBA, ECF No. 1-6, Ex. 2, Art. XX); (Trust Agreement, ECF No. 1-7, Ex. 3, Art. VI §4); (Plan Rules, ECF No. 1-8, Ex.4 §10.12(a)-(b)).

The Pension Fund and FTI are trust funds established under section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5); (ECF No. 1 ¶¶ 4, 9). The Pension Fund's trustees are the

"named fiduciary," "plan administrator," and "plan sponsor," and each is an individual "fiduciary" for the IPAT Pension Plan ("Pension Plan") and the IPAT Annuity Plan ("Annuity Plan") within the meaning of ERISA. (ECF No. 1 ¶ 4.) LMCI is an unincorporated employer association established under 29 U.S.C. § 186(c)(9). (Id. ¶ 10.) The Pension Plan, Annuity Plan, and FTI are "multiemployer plans" within the meaning of ERISA. (Id. ¶¶ 5, 6, 9.) The Pension Fund and Mr. Meyers are authorized collection fiduciaries and agents of the Pension Plan, Annuity Plan, FTI, and LMCI. (Id. ¶ 8.)

Plaintiffs allege that defendant failed to pay contributions to the Pension Fund for the period of September through December of 2010 as required by the CBA, Trust Agreement, and Plan. (Id. ¶ 25.) Defendants resolved this delinquency by entering into a Promissory Note ("Note") and Personal Guarantee ("Guarantee"), notarized on April 5, 2011, pursuant to which the parties agreed that defendants had incurred a delinquency of $78,815.28 to the Pension Fund for unpaid contributions for the period of September through December 2010 and that defendants would pay the Pension Fund a settlement sum of $79,697.34 in six consecutive monthly installments. (Note, ECF No. 1-5, Ex. 1.) The Note included a conditional waiver of liquidated damages by plaintiffs in the amount of $15,763.06. (Id.); (Montemore Aff., ECF No. 11-4, Ex. 1 ¶ 9.) After one payment of $13,397.68, defendants defaulted on their obligations under the Note and Guarantee. (ECF No. 1 ¶¶ 21-22); (Montemore Aff, ECF No. 11-4, Ex. 1 ¶ 9).

On July 15, 2011, plaintiffs filed this suit, alleging that defendant failed to pay "at least" $82,651.29 that it owed in contributions under the CBA. (ECF No. 1 ¶ 25.) In their Complaint, plaintiffs sought: (1) to recover the unpaid contributions as well as liquidated damages, interest, attorneys' fees, and costs, including the cost of any audit; (2) an injunction ordering defendant to submit to and pay for an audit or to cooperate with "alternative methods" to determine the total

amount of contributions due; and (3) to recover any other unpaid contributions discovered during the audit. (Id. ¶¶ 26, 34, 40, 44, 46.)

Defendants were served with a Summons and copy of plaintiffs' Complaint on August 4, 2011, as indicated by the return of service filed with the court on August 19, 2011. (ECF Nos. 6, 7.) After defendants failed to file an Answer or otherwise defend, plaintiffs filed a Request for Entry of Default, which the Clerk granted on September 19, 2011. (ECF Nos. 9, 10.) On November 7, 2011, plaintiffs filed the instant Motion for Default Judgment. (ECF No. 11.) Thereafter, Judge Quarles referred plaintiffs' motion to the undersigned to review and to make recommendations concerning damages. (ECF No. 12.)

## II. STANDARD FOR ENTRY OF DEFAULT JUDGMENT

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001). It remains for the court, however, to determine whether these unchallenged factual allegations constitute a legitimate cause of action. Id.; see also 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. Ryan, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. E.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court may also make a determination of damages without a hearing, so long as

there is an adequate evidentiary basis in the record for the award. See, e.g., Stephenson v. El-Batrawi, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum). In addition, with respect to the character of the amount and judgment, Rule 54(c) of the Federal Rules of Civil Procedure provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

In sum, the court must (1) determine whether the unchallenged facts in plaintiff's Complaint constitute a legitimate cause of action, and, if they do, (2) make an independent determination regarding the appropriate amount of damages.

## III. DISCUSSION

### A. Defendants' Liability

Plaintiffs allege two primary causes of action. First, plaintiffs claim that defendant breached the terms of the CBA as well as the incorporated Trust Agreement and Plan documents by failing to make all of its required contributions from September through December 2010, and that this breach constitutes a violation of § 515 of ERISA. (ECF No. 1 ¶¶ 25, 36, 42-43.) Section 515 of ERISA obligates employers subject to a multi-employer plan or collective bargaining agreement to make contributions in accordance with the terms of the plan or agreement; section 302 authorizes parties to a CBA or plan to enforce their terms. 29 U.S.C. §§ 1132, 1145. As discussed further herein, the well-pled allegations in plaintiffs' Complaint establish that defendant was bound by the terms of the CBA and that, between the months of

September and December 2010, defendant breached the CBA by failing to pay contributions due to the ERISA funds under the CBA's terms. (ECF No. 1 ¶¶ 16-18, 25, 36, 42-43); (CBA, ECF No. 1-6, Ex. 2). Therefore, plaintiffs have proven defendants' liability for breach of the CBA, and that defendants' breach, with respect to the Pension Plan, Annuity Plan, and FTI, constitutes a violation of § 515 of ERISA.[1]

Plaintiffs' second cause of action asserts they may also enforce the terms of the CBA under § 301 of the LMRA, 29 U.S.C. § 185. (ECF No. 11-2 at 17.) The LMRA confers jurisdiction on United States district courts to hear suits alleging violations of a contract "between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The LMRA also authorizes plaintiffs, as an employee benefit trust fund and trustee, to bring such an action to enforce the terms of the CBA and to seek remedies for its breach. Id.; Int'l Painters & Allied Trades Indus. Pension Fund, et al. v. H.C. Ackerman & Son, Inc., 2012 WL 251963, at *2 (D. Md. Jan. 24, 2012) (finding plaintiffs, benefit trust fund and trustee, as intended third party beneficiaries of a CBA, had standing to sue under 29 U.S.C. § 185(a)); Int'l Painters & Allied Trades Indus. Pension Fund, et al. v. HG Prof'l Painting, Inc., 2011 WL 3744123, at *4 (D. Md. Aug. 23, 2011) (same). As discussed above, plaintiffs have proven defendants' liability for a breach of the CBA. Accordingly, in addition to seeking remedies under ERISA, plaintiffs may enforce the terms of the CBA under the LMRA. See Hudson Cnty. Carpenters Local Union No. 6 v. V.S.R. Constr. Corp., 127 F. Supp. 2d 565, 568 (D. N.J. 2000) ("It is well-established that a failure to make contributions to a union trust fund as required by a [CBA] constitutes a violation of ERISA § 515 and a violation of

[1] The Pension Plan, Annuity Plan, and FTI are "multiemployer plans" within the meaning of ERISA. (ECF No. 1 ¶¶ 5, 6, 9.) LMCI is not a "multiemployer plan" within the meaning of the statute. (Id. ¶ 10.)

LMRA § 301.").

Finally, plaintiffs claim that they may also recover damages under the LMRA pursuant to the Note and Guarantee executed by defendant Cruz on behalf of defendant DLC. (Note, ECF No. 1-5, Ex. 1.) Plaintiffs allege that defendants defaulted on the Note by failing to submit the two settlement installments. (ECF No. 1 ¶ 21.) They assert that the Note and Guarantee are agreements described in the LMRA and seek to enforce the terms of these agreements pursuant to the LMRA. (Id. ¶¶ 20, 38-40 (citing 29 U.S.C. § 185(a)).) As discussed above, the LMRA confers jurisdiction on this court to adjudicate breach of contract claims. 29 U.S.C. § 185(a). The statute also authorizes plaintiffs, as beneficiaries of the Note and Guarantee, (which was executed to resolve defendants' delinquency under the CBA), to bring an action to enforce the terms of the Note and Guarantee. 29 U.S.C. § 185(a); (Note, ECF No. 1-5, Ex. 1); see also Wilkes-Barre Publ'g Co. v. Newspaper Guild Local 120, 647 F.2d 372 (3d Cir. 1981) ("[S]o long as the obligation sought to be enforced has its source in the provisions of a [CBA], remedies for its enforcement may be available under section 301(a) [of the LMRA] in suits other than on the contract itself."). The well-pled allegations in plaintiffs' Complaint establish that defendants were bound by the Note and Guarantee, and that defendants breached the Note and Guarantee by failing to make payments to plaintiffs as required by the terms of Note. (ECF No. 1 ¶¶ 20-21, 38-40.) Accordingly, the undersigned concludes that plaintiffs have established defendants' liability under the Note and Guarantee and that defendants' liability under the agreements provides a viable and alternative theory for recovery of the damages that plaintiffs seek.

Accordingly, I conclude that plaintiffs are entitled to relief on their claims brought pursuant to ERISA and the LMRA.

**B. Damages**

Having determined that plaintiffs have proven liability, the undersigned now undertakes an independent determination of the damages to which they are entitled. Pursuant to ERISA, the terms of the CBA, and the incorporated Trust Agreement and Plan documents, plaintiffs seek to recover a total sum of at least $87,665.69 from defendants.[2] (ECF Nos. 11, 11-1.) This requested sum includes damages against defendants in the amount of $82,751.44,[3] broken down as follows: (1) unpaid contributions totaling $65,417.60; (2) liquidated damages totaling $15,763.06; and (3) interest in the amount of $1,570.78. (Id.)

To prove their damages, plaintiffs submit: (1) the CBA entered into by defendant and the Union (CBA, ECF No. 11-5, Ex. 2); (2) the Trust Agreement for the Pension Fund (Trust

---

[2] The CBA and ERISA both provide for the following mandatory remedies as to unpaid contributions in violation of § 515 of ERISA:

(A) recovery of the unpaid contributions;
(B) interest on unpaid contributions (at rate for underpayment of federal income taxes under IRC 6621);
(C) liquidated damages equal to the greater of
  i. interest on unpaid contributions, or
  ii. 20 percent of the unpaid contributions
(D) reasonable attorney's fees and costs of the action; and
(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); (CBA, ECF No. 11-5, Ex. 2, Art. XX); (Trust Agreement, ECF No. 11-6, Ex. 3, Art. VI § 4); (Plan Rules, ECF No. 11-7, Ex.4 § 10.12(a)-(b)).

[3] Plaintiffs' Complaint and Motion for Default Judgment set forth the individual amounts due to each Fund. (ECF Nos. 1, Ex. 5, 11-1.) The undersigned notes that plaintiffs' Complaint seeks damages in the amount of $82,651.29 (ECF No. 1, Ex. 5), while plaintiffs' Motion seeks $82,751.44 in damages. (ECF Nos. 11-1, 11-2 at 3.) Rule 54(c) of the Federal Rules of Civil Procedure provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, although plaintiffs' Motion requests an additional $100.15 in damages, this figure reflects plaintiffs' request for an additional $100.15 in interest assessed against defendants for the time period that has elapsed since plaintiffs' Complaint was filed on July 15, 2011. (ECF Nos. 1, 11-1.) Accordingly, I find that a reduction in the amount of damages sought by plaintiffs in their Motion, $82,751.44, is not warranted under Rule 54(c).

Agreement, ECF No. 11-6, Ex. 3); (3) the Plan Rules and Regulations for the Pension Fund (Plan, ECF No. 11-7, Ex. 4); (4) the Promissory Note and Personal Guarantee executed by the Company (Note, ECF No. 11-8, Ex. 5); and (5) the Affidavit of Mr. Thomas C. Montemore ("Mr. Montemore"), Assistant to the Fund Administrator of the plaintiff Pension Fund. (Montemore Aff., ECF No. 11-4, Ex. 1.) In his affidavit, Mr. Montemore includes the following table, which summarizes the amounts that defendants owe the Pension Fund:

| **Fund** | **Contributions** | **Interest** | **Liquidated Damages** | **TOTAL** |
|---|---|---|---|---|
| **Pension Plan** | $39,501.76 | $1,239.40 | $10,227.79 | **$50,968.95** |
| **Annuity Plan** | $25,073.18 | $313.94 | $5315.33 | **$30,702.45** |
| **LMCI** | $421.33 | $8.72 | $109.97 | **$540.02** |
| **FTI** | $421.33 | $8.72 | $109.97 | **$540.02** |
| **TOTAL** | **$65,417.60** | **$1,570.78** | **$15,763.06** | **$82,751.44** |

### 1. Unpaid Contributions

Plaintiffs seek to recover unpaid contributions totaling $65,417.60. (ECF Nos. 11, 11-1, 11-2.) In his affidavit, Mr. Montemore notes that this amount is "based upon information currently available to the Pension Fund." (Id. ¶ 9.) He states that "[d]efendants owe $65,417.60 in contributions for the period September 2010 … through December 2010" and that this figure "is based on reports prepared by Defendants and submitted to the Fund." (Id.) Mr. Montemore also states that [defendants] executed a Note and Guarantee, "wherein they agreed to pay a settlement sum of $79,687.34 in six monthly payments . . . ." (Id.) Mr. Montemore asserts that "[t]he Note included a conditional waiver of liquidated damages in the amount of $15,763.06," and that, "under the terms of the Note, upon default the Defendants owe the conditionally waived

amount plus interest in addition to the other amounts due under the Note." (Id.) In the Note, defendants agreed that they were "delinquent in contributions" to the Pension Fund in the principal amount of $78,815.28 for the period of September 2010 through December 2010. (Note, ECF No. 11-8, Ex. 5.) Mr. Montemore states that "[a]fter one payment of $13,397.68, defendants defaulted on the Note." (Montemore Aff., ECF No. 11-4, Ex. 1 ¶ 9.) Based on the terms of the Note and the payment made, the balance of unpaid contributions owed by defendants to plaintiffs is $65,417.60.[4] (Note, ECF No. 11-8, Ex. 5.) I find that plaintiffs have presented sufficient evidence to establish the amount of unpaid contributions that they are entitled to collect. Accordingly, I recommend granting plaintiffs' request to recover damages for unpaid contributions in the amount of $65,417.60.

**2. Interest**

Plaintiffs seek interest assessed against defendants for unpaid contributions through September 15, 2011 in the amount of $1,570.78. (ECF Nos. 11, 11-1.) ERISA provides for an award of interest on unpaid contributions "determined by using the rate provided under the [relevant multiemployer] plan." 29 U.S.C. § 1132(g)(2). The CBA, through the incorporated Plan documents, prescribes an interest rate "determined at the rate for underpayment of federal income taxes under IRC 6621." (Plan Rules, ECF No. 11-7, Ex.4 § 10.12(b).) Accordingly, plaintiffs are entitled to interest at the rate prescribed in 26 U.S.C. § 6621. Mr. Montemore testifies that the amount of interest shown in the table "has been calculated in accordance with the fluctuating IRS interest rate, as provided at section 10 of the Plan." (Montemore Aff., ECF No. 11-4, Ex. 1 ¶ 9.) I find that this evidence adequately establishes the interest that plaintiffs

[4] Subtracting defendants' $13,397.68 installment payment from the principal amount of $78,815.28 in outstanding contributions, as stated in the Note, yields $65,417.60, the figure of outstanding contributions that Mr. Montemore states defendants owe plaintiffs. (Montemore Aff., ECF No. 11-4, Ex. 1 ¶ 9.)

are entitled to collect. Accordingly, I recommend granting plaintiffs' request for interest in the amount of $1,570.78.

**3. Liquidated Damages**

Plaintiffs seek a total sum of $15,763.06 in liquidated damages. (ECF Nos. 11, 11-1.) Section 10 of the Plan "parallels" § 502(g)(2) of ERISA, and provides for liquidated damages equal to the greater of: (1) the accrued interest on the unpaid contributions; or (2) twenty (20) percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2); (Plan Rules, ECF No. 11-7, Ex.4 § 10.12(b)); (Montemore Aff., ECF No. 11-4, Ex. 1 ¶ 9). Plaintiffs explain that they calculated their liquidated damages at the rate of 20 percent of the principal contribution delinquency as stated in the Note: $78,815.28. (ECF No. 1, Ex. 5 n.4.) Mr. Montemore testifies that, in this case, the accrued interest on defendant's unpaid contributions, $1,570.78, is less than 20 percent of the unpaid contributions, $15,763.06, and that, accordingly, defendants owe liquidated damages in the amount of $15,763.06. (Montemore Aff., ECF No. 11-4, Ex. 1 ¶ 9.) I find this evidence adequate to establish the liquidated damages that plaintiffs are entitled to collect. Accordingly, I recommend granting plaintiffs' request for liquidated damages in the amount of $15,763.06.

In sum, I recommend that the court award plaintiffs a total of $82,751.44 in damages, liquidated damages, and interest, pursuant to ERISA, the LMRA, the CBA, the incorporated Trust Agreement and Plan documents, and the Note and Guarantee. See Trs. of Glaziers Local 963 Pension, Welfare, & Apprentice Funds v. Walker & Laberge Co., Inc., 619 F. Supp. 1402, 1405 (D. Md. 1985) (plaintiff may recover liquidated damages and interest on late contributions to employee benefit plan under terms of collective bargaining agreement and incorporated trust agreements); see also Laborers' District Council Pension, et al. v. E.G.S., Inc., 2010 WL

1568595, at *4 (D. Md. Apr. 16, 2010) (recommending that district court award damages for unpaid contributions, liquidated damages, and interest in ERISA default judgment action pursuant to collective bargaining and trust agreements).

### C. Other Relief

In addition to damages, plaintiffs seek attorneys' fees, costs, and injunctive relief.

#### 1. Attorneys' Fees and Costs

Plaintiffs request $4,357.00 in attorneys' fees and $557.25 in costs of suit, totaling $4,914.25. Both the CBA and ERISA mandate an award of "reasonable" attorneys' fees and costs. 29 U.S.C. § 1132(g)(2); (Plan Rules, ECF No. 11-7, Ex.4 § 10.12(b)). In order to properly determine an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" by multiplying the number of hours reasonably expended times a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 888 (1984); Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008). The plaintiff must demonstrate that "the number of hours for which [they] seek[] reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." Travis v. Prime Lending, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008).

In support of their request for attorneys' fees and costs, plaintiffs submit the affidavit of Ms. Dawn M. Costa, Esquire ("Ms. Costa"), an attorney with the law firm retained by plaintiffs. Ms. Costa attaches an itemization of legal fees and costs incurred in the instant case in accordance with this court's Local Rules. Loc. R. 109.2, App. B. § 3. (Counsel Aff., ECF No. 11-9, Ex. 6); (Time & Expense Details, ECF No. 11-10, Ex. 7). Ms. Costa states that the proposed lodestar calculation represents 27.10 hours of work performed in this case at hourly

rates of $220 for attorneys and $70 for paralegals and clerks.[5] (Counsel Aff., ECF No. 11-9, Ex. 6 ¶ 4.) The itemization of legal fees and costs demonstrates that the work performed included the following activities: preparing the complaint and related papers, communicating with the client, co-counsel, and the process server, and preparing the instant Motion. (Time & Expense Details, ECF No. 11-10, Ex. 7.) I find that the time spent and hourly rate are reasonable and consistent with attorney fee awards in similar cases, and accordingly, recommend granting plaintiffs' request for $4,357.00 in attorneys' fees.

Finally, I find that plaintiffs' litigation costs of $557.25 are reasonable and documented in the record (ECF No. 1); (Time & Expense Details, ECF No. 11-10, Ex. 7) and recommend granting this request. See Schedule of Fees, http://www.mdd.uscourts.gov /publications/Forms/ScheduleofFees.pdf (June 29, 2009) (cost of filing a civil action in this court is $350.00).

**2. Injunctive Relief**

Finally, plaintiffs request that the court issue an injunction requiring defendants to (1) submit to an audit and (2) file remittance reports.[6] (ECF Nos. 1 ¶ 34, 11, 11-1 ¶ 6.) ERISA and the CBA both provide for an award of "other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2); (Plan Rules, ECF No. 11-7, Ex.4 § 10.12(b)). Courts have recognized their power under ERISA to issue injunctions ordering employers to comply with the

---

[5] Each of the attorneys who performed work in this case have practiced law for the requisite number of years so as to qualify for an hourly rate of $220 in accordance with this court's Local Rules. Loc. R. App. B. § 3. The $70 hourly rate that plaintiffs seek for work performed in this case by the paralegal and the legal assistant is below the hourly rate of $95-115 for work performed by paralegals and law clerks set forth in the Local Rules. Id.

[6] The undersigned will not address plaintiffs' request that the court issue an injunction requiring defendant to file remittance reports (ECF Nos. 11, 11-1 ¶ 6) because plaintiffs did not request this form of equitable relief in their Complaint. (ECF No. 1 ¶ 34.) See Fed. R. Civ. P. 54(c).

obligations of their labor contracts, including contractual agreements for an audit. See, e.g., H.C. Ackerman & Son, Inc., 2012 WL 251963, at *4 (granting plaintiffs' request for audit as provided for in labor contract in action brought under ERISA and the LMRA); Maguire v. America Piles, Inc., 2002 WL 31626972, at *1 (S.D.N.Y. 2002) (ordering employer to cooperate in audit and pay costs of audit in action brought to recover delinquent contributions under ERISA and the LMRA); see also Flynn v. Mastro Masonry Contractors, 237 F. Supp. 2d 66, 70 (D. D.C. 2002) ("ERISA authorizes the court to provide for other legal or equitable relief as the court deems appropriate. This relief can include an injunction requiring a defendant to permit, and cooperate with, an audit of its books and records.") (internal citations omitted). Here, plaintiffs request an injunction ordering defendants to submit to an audit of defendant DLC's records within 20 days "for all periods for which defendants are obligated to contribute to the plaintiffs." (ECF No. 11-1 ¶ 6.) The terms of the CBA require defendant to submit to an audit and pay the costs of the audit if found to be delinquent as a result of the audit. (CBA, ECF No. 11-5, Ex. 2, Art. XX § 3); (Trust Agreement, ECF No. 11-6, Ex. 3, Art. VI §§ 5-6). Plaintiffs have shown that an audit is necessary to "make a precise determination" of the amount defendant owes in unpaid contributions and to "obtain accurate data on benefits eligibility" of individual participants. (ECF No. 11-2 at 20-21); (Montemore Aff., ECF No. 11-4, Ex. 1 ¶¶ 11-12). Accordingly, I find that the relief that plaintiffs request is appropriate and recommend granting plaintiffs' request for an injunction requiring defendant to submit to an audit.

## IV. CONCLUSION

In sum, I recommend that:

1. The court GRANT plaintiffs' Motion for Judgment by Default by the Court Pursuant to Federal Rule of Civil Procedure 55(b)(2) against Defendants (ECF No. 11); and

2. The court award plaintiffs damages for unpaid contributions in the amount of $65,417.60, liquidated damages in the amount of $15,763.06, interest in the amount of $1,570.78, attorneys' fees of $4,357.00, and $557.25 in costs of suit; and
3. The court issue an injunction requiring defendants, within 20 days, to submit to an audit of defendant DLC's books and records, for all periods for which defendants are obligated to contribute to the plaintiffs.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendants DLC Corporation, Inc. and Debbie Lori Cruz at the addresses listed on plaintiffs' Complaint. (ECF No. 1.)

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date: 4-11-12

/s/
Beth P. Gesner
United States Magistrate Judge